**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Bilal A. Al-Haqq, #126806,[1] | ) | Case No. 2:17-cv-534-TMC-MGB |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Joette D. Scarborough (Division Director | ) | |
| Central Classification and Inmate | ) | |
| Records), et al., | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

This is a civil action pursuant to 42 U.S.C. § 1983. Plaintiff is a state prisoner incarcerated at Trenton Correctional Institution ("Trenton C.I.") located in South Carolina. He is proceeding *pro se* and *in forma pauperis*. Plaintiff was given leave to file a "Second Amended Complaint" (DE# 41, Order of 06/30/2017), but he did not file one. Therefore, the Court is proceeding under the Amended Complaint. (DE# 24). Pursuant to 28 U.S.C. §636(b)(1) and Local Civil Rule 73.02(B)(2)(D.S.C.), the assigned United States Magistrate Judge is authorized to review the pleadings and to submit findings and recommendations to the United States District Judge. After careful review, the Magistrate Judge recommends that the Amended Complaint (DE# 24) be **summarily dismissed**, with prejudice, and without issuance and service of process, for the following reasons:

## I. Background

In 1992, Plaintiff was convicted of multiple criminal charges in the Williamsburg County Court of Common Pleas. See Indictment No. 92-GS-45-80. The state court sentenced Plaintiff to twenty-five (25) years imprisonment for armed robbery, thirty (30) years for kidnapping, and five

---

[1] Plaintiff's given name is Michael Dion McFadden.

(5) years for a firearms violation. Plaintiff is presently serving these state sentences. State records indicate his projected release date is May 13, 2028.[2]

While incarcerated, Plaintiff has filed numerous other federal cases, including *Al-Haqq v. Bryant*, D.S.C. Case No. 2:14-cv-08-MGB. In that case, Plaintiff complained of various matters at Turbeville Correctional Institution ("Turbeville CI"), including a disciplinary charge for "refusing to obey orders" after being told to stop kicking his cell door.[3] Plaintiff also complained that he had been sprayed with tear gas by Correctional Officer Bryant and not allowed to decontaminate afterwards "out of retaliation for filing a grievance and for reporting [CO Bryant's] alleged illegal activities." The claims and parties were dismissed, except for the allegations against CO Bryant, which proceeded to trial. Final judgment was entered on November 15, 2016. (*Id*., DE# 173, Judgment). The record reflects that such judgment has been satisfied.

Thereafter, Plaintiff filed additional documents in that closed case. (*Id*., DE# 177, 186, 187, filed in Jan./Feb. 2017). Plaintiff alleged that he had been endangered at Turbeville C.I. due to information on Westlaw about him being a "snitch," that his complaints to prison officials about the Westlaw information had been ignored, that he wanted this Court to order that the South Carolina Department of Corrections ("SCDC") never return him to Turbeville C.I., and that he wanted to be restored to his prior bed and prison job at Kirkland Correctional Institution ("Kirkland C.I."). In a "declaration" (DE# 186), Plaintiff also complained of his medical care at MacDougall Correctional Institution ("MacDougall C.I.") in February 2017. Plaintiff indicated he was "bringing an action" and seeking injunctive relief.

---

[2] See http://public.doc.state.sc.us/scdc-public/inmate. Site checked November 16, 2017.

[3] Plaintiff argued that there was no official rule against kicking the cell door. Such argument is irrelevant, as his disciplinary charge was for "refusing to obey an order."

On February 24, 2017, the Magistrate Judge issued the following order:

> TEXT ORDER: Judgment was entered in this case on November 15, 2016, judgment has been satisfied, and this case is now closed. Nonetheless, Plaintiff subsequently filed a document labeled as an "order to show cause for permanent injunction" (DE# 177), with a declaration (DE#187) in support. Plaintiff's document (DE# 177) indicates that he is attempting to bring an action "under 28 U.S.C. 2283 and 2282" and is seeking injunctive relief. Therefore, the Clerk of Court is directed to term the motion (DE#177), to open a new case as of the date of this order, and to file Plaintiff's documents (DE# 177, 187) as the *pro se* Complaint in the new case. The Clerk of Court should not accept any further filings in the closed case (No. 2:14-cv-8-MGB). Additionally, Plaintiff filed a declaration (DE# 186), which appears to complain that he has been denied medical care in February 2017. Therefore, the Clerk of Court is directed to open a second new case as of the date of this order, and to file Plaintiff's document (DE# 186) as the *pro se* Complaint there. Counsel in the closed case has no responsibility regarding the two new cases.

Based on Plaintiff's filings and the above order, the Clerk of Court entered two new cases in the docket on February 24, 2017. See Case Nos. 2:17-cv-534-TMC-MGB, 2:17-cv-535-TMC-MGB.

In the present case, the Court issued a Proper Form Order. (DE# 5). Plaintiff then moved to amend his Complaint. (See DE# 9 motion to amend; DE# 9-1 "amendments;" DE# 9-2, tendered amended pleading, filed 3/27/2017). Plaintiff subsequently indicated that he had changed his mind and wanted the Court to dismiss the two defendants he had sought to add to the case. The Court issued a second Proper Form Order on March 28, 2017. (DE# 13). On May 22, 2017, Plaintiff moved to amend again. (DE# 17) and filed a document labeled as a "supplemental" complaint that sought to add an unrelated claim against a new defendant at a different prison. Such "supplement" had nothing to do with the present case, and appeared to be an attempt to evade the PLRA's filing fee requirements. Plaintiff's initial motion to amend (DE# 9) was granted, but his additional motion to file a supplemental complaint piecemeal (DE# 17) was denied. (DE# 22, Order of

05/24/2017).[4] Plaintiff's tendered "Amended Complaint" and exhibits were filed in the docket (See DE# 24, 24-1, 24-2, totaling 87 pages with attachments).

Plaintiff confusingly labeled several different documents as the "Amended Complaint," attached medical documents that pertain to a different case,[5] made conclusory allegations that lacked dates, places, or any other specific facts, appeared to reassert allegations from other cases, included unrelated allegations pertaining to other prisons, added defendants (but changed his mind), and appeared to make scattered additional claims that are based on a misapprehension of facts, have no relation to his brief stay at Turbeville C.I., or are otherwise nonsensical.[6]

Rather than setting forth a "short and plain" statement of his facts and claims (which is all that is required of a complaint, see Fed.R.Civ.P. Rule 8), Plaintiff's Amended Complaint attached numerous declarations, grievances, and other exhibits that appear to concern other unrelated matters. The *pro se* Plaintiff continued to file various motions, declaration, notices, and miscellaneous documents. (DE# 25-29, 32, 35, 38-40). Even liberally construing this collection of *pro se* documents, it was difficult to decipher what claims Plaintiff was actually attempting to

---

[4] With respect to the unrelated "supplemental" pleading, Plaintiff was advised that he could file a separate lawsuit based on such unrelated claim, if he chose to, but that he could not properly add it to the present case.

[5] For example, Case No. 2:17-cv-535-TMC-MGB concerns Plaintiff's allegations about his medical care at MacDougall C.I. in 2017. Plaintiff appears to have intermingled duplicate exhibits and allegations from that lawsuit in the present lawsuit. (See DE# 24-2 at 22-25). Moreover, Case No. 2:14-cv-08-MGB involved Plaintiff's allegations that he had been sprayed in the face with tear gas while at Turbeville C.I. Plaintiff may not relitigate such incident or any resulting injuries here. That case is now closed.

[6] For example, Plaintiff's Amended Complaint alleges that "Thomson Reuters" is an SCDC staff attorney who violated § 1983 by conspiring with other defendants to "retaliate" against him by placing information on Westlaw about one of Plaintiff's prior cases (see DE# 24 at 6, 18; DE#24-1 at 1-3, 9, 16, 23). Plaintiff listed the "employer" of Thomson Reuters as "South Carolina Dept. of Corrections, Thomson Reuters – West Law Correctional." (DE# 24 at 4). Plaintiff made a written request to SCDC demanding to know "who entered" such information into the inmate computers and "who is Thompson Reuters Westlaw Correctional?" (DE# 24-2 at 32, filed 3/8/2017). The record reflects that SCDC staff attorney Amy Rumler promptly and correctly advised Plaintiff in writing that Thomson Reuters is a company whose Westlaw service places public information about legal cases online. (DE #24-2 at 32).

assert. Therefore, Plaintiff was given notice that the Court was considering dismissing the case. (DE# 41, Order of 06/30/2017).

Given Plaintiff's *pro se* status, the Court gave Plaintiff an additional opportunity to amend his pleading. Specifically, the Court gave Plaintiff thirty (30) days to file a "Second Amended Complaint" with all the claims he wished to assert and a "short and plain" statement of the facts regarding those claims. (DE# 41). The Court instructed Plaintiff that he should not reassert any previously-adjudicated claims, nor include duplicate claims from other pending lawsuits. (*Id.*). Plaintiff was instructed that, for his claims to be properly before the Court, he should submit a single complete pleading, rather than various documents piecemeal. (*Id.*). The Court emphasized that Plaintiff must put all his claims in the Second Amended Complaint, not in various "declarations" scattered throughout the record. The Court further instructed Plaintiff that if he filed a Second Amended Complaint, it should plainly and concisely state the names of the defendants, all the claims asserted against them, the supporting facts, and the relief sought. Plaintiff was warned that failure to comply with the Court's Order could result in dismissal of the case. (*Id.*). Plaintiff did not file a Second Amended Complaint or make any attempt to clarify his claims or otherwise comply with the Court's Order.

## II. <u>The Present Lawsuit</u>

### A. <u>Parties</u>

Plaintiff sues various SCDC employees and officials in their individual and official capacities. (DE# 24 at 1-4). Plaintiff sues:  1) Joette D. Scarborough (described as "Division Director Central Classification and Inmate Records"); 2) A/W Lane (described as "Kirkland Correctional Institution, SCDC Classification Personnel"); 3) A/W Dean; 4) Major Chavalus; 5) Capt. Pat; 6) Capt. Coleman; 7) Lt. June; 8) Amy Rumler; and 9) Thomson Reuters. Amy Rumler

is a staff attorney for SCDC, while Thomson Reuters is a corporation that operates the Westlaw database.[7] Although Rumler and Thomson Reuters were added in the Amended Complaint, Plaintiff changed his mind and indicated in a letter to the Court that he wanted them "excluded from this case." (DE# 11-4, letter of 4/17/2017).

**B. <u>Allegations</u>**

In his Amended Complaint, Plaintiff indicates that he was transferred on November 28, 2016 from Kirkland C.I. to Turbeville C.I. (DE# 24). Although Plaintiff complains about his brief period of incarceration there, state records indicate that Plaintiff is no longer at Turbeville C.I. On February 13, 2017, he was moved to MacDougall C.I. Plaintiff filed this lawsuit on February 24, 2017, when he was no longer subject to any conditions at Turbeville C.I. The gist of the Amended Complaint (and its numerous attachments) is that Plaintiff wants the Court to order him returned to Kirkland C.I. so that he can get his former bed and job assignment back. (DE# 24-1 at 9-10, 15 complaining that his "bed and room" at Kirkland C.I. were "given away"). Plaintiff also wants the Court to order that he never be transferred back to Turbeville C.I. Plaintiff is currently incarcerated at Trenton C.I. (DE# 38).

Plaintiff also complains about information he found on Westlaw regarding one of his prior cases. (DE# 24 at 6; DE# 24-1 at 3, 9). Plaintiff wants such information removed from Westlaw because it allegedly "endangers" him at Turbeville C.I.  (*Id*.). In that prior case (Case No. 2:14-cv-08-MGB, *Al-Haqq v. Bryant*), Plaintiff had reported that a correctional officer was allegedly bringing tobacco and drugs into the prison and was letting inmates fight in the showers. In 2016, Plaintiff noticed that information about such prior case was "on the computer" in the Turbeville

---

[7] Plaintiff alleges that "Thomson Reuters" is a staff attorney in the SCDC Office of General Counsel. (DE# 24-1 at 2, ¶ 6). Plaintiff listed the "employer" of Thomson Reuters as "South Carolina Dept. of Corrections, Thomson Reuters – West Law Correctional." (DE# 24 at 4).

law library on the Westlaw database. (DE# 24 at 6). Plaintiff wrote to SCDC demanding to know "who entered" such information into the "inmate computers" and "who is Thompson Reuters Westlaw Correctional?" (DE# 24-2 at 32). SCDC staff attorneys responded promptly, explaining accurately that this "is an online service created by Westlaw, a subdivision of the company Thompson Reuters" and that the purpose of the service is to "provide inmates with access to legal information and sources like cases and statutes." (*Id*.). SCDC's response further advised Plaintiff that 'the opinions of judges in court cases are public information" and that Westlaw gathers such information and puts it "into their searchable online service." (*Id*.).

Plaintiff generally contends that he would be in danger from other inmates at Turbeville C.I. for being a "snitch" and because he would not share his "power cord" with other prisoners. Plaintiff complains that he does not like Turbeville C.I. because it is often on lockdown and generally has a reputation for gang members. (DE# 24-1 at 19). He complains that "the windows in the building was busted out as a result of a riot that had taken place in that dorm." (*Id*. at 20). Plaintiff acknowledges in his Amended Complaint that Defendant A/W Dean "moved the Plaintiff to another dorm" after such incident. (*Id*. at 6).

For relief, Plaintiff demands that he be returned to Kirkland C.I. and restored to his previous "status and living quarters," i.e. he wants his previous prison "bed and job" back. (DE# 24 at 19; 24-1 at 3, 12). Plaintiff wants the Court enjoin the Defendants from ever transferring him to Turbeville C.I. again. (*Id*.). Plaintiff demands that "information [be] removed from the SCDC Inmate Law Library computers" and seeks "an order modifying information stored in those computers." (*Id*.; see also (DE# 24-1 at 3). He demands compensatory damages of $175,000.00, punitive damages of $325,000.00 from each Defendant, and "actual damages" in the amount of

$85,000.00 from each Defendant. (*Id.* at 19-20). He does not explain how he allegedly accrued any "actual damages" in prison.

### C.  Causes of Action

Plaintiff's initial filing indicated that he was attempting to bring an action "under 28 U.S.C. 2283 and 2282." (DE# 1). However, he cannot proceed under 28 U.S.C. § 2282 because it was repealed in 1976. See Pub.L. 94-381, § 2, Aug. 12, 1976, 90 Stat. 1119. Moreover, Section 2283 provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The present case does not involve a "stay [of] proceedings in a State court," and such statute has no application here. In any event, Plaintiff subsequently filed an Amended Complaint, indicating he was suing under 42 U.S.C. § 1983 for alleged violation of the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. (DE# 24 at 5). Plaintiff is now complaining of conditions of confinement.

## III.  Relevant Law

### A.  Standard of Review

Under established local procedure in this judicial district, the Magistrate Judge has carefully reviewed this *pro se* prisoner complaint pursuant to 28 U.S.C. § 1915 and in light of the following precedents: *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); and *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978).

The Prison Litigation Reform Act ("PLRA") permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit. 28 U.S.C. § 1915(a)(1). To protect against possible abuses of this privilege, the statute allows the

court to dismiss the case upon finding that the action is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. §1915(e)(2)(B). A finding of frivolity can be made where the complaint lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). Under 28 U.S.C. §1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed *sua sponte* "at any time." *Neitzke*, 490 U.S. at 319.

With respect to a failure to state a claim, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke*, 490 U.S. at 326. The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. "Unless otherwise specified, a dismissal for failure to state a claim under Rule 12(b)(6) is presumed to be both a judgment on the merits and to be rendered with prejudice." *McLean v. United States*, 566 F.3d 391, 396 (4th Cir. 2009).

*Pro se* pleadings are given liberal construction and are held to a less stringent standard than formal pleadings drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "[t]he 'special judicial solicitude' with which a district court should view ... *pro se* filings does not transform the court into an advocate. *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir.2012), *cert. denied*, 133 S.Ct. 2401 (2013). Only those questions which are squarely presented to a court may properly be addressed." *Weller v. Dept. of Soc. Servs., City of Baltimore.,* 901 F.2d 387, 391 (4th Cir.1990). Giving "liberal construction" does not mean that the Court can ignore a prisoner's clear failure to allege facts that set forth a cognizable claim. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985), *cert. denied*, 475 U.S. 1088 (1986).

### B.  **The PLRA's 3-strike provision**

The PLRA provides that:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g); *see McLean*, 566 F.3d at 404. "[I]f a prisoner has already had three cases dismissed as frivolous, malicious, or for failure to state a claim for which relief may be granted, the prisoner generally may not proceed IFP but rather must pay up-front all filing fees for his subsequent suits." *Blakely v. Wards*, 738 F.3d 607, 609 (4th Cir.2013), as amended (Oct. 22, 2013). This means that, after receiving three strikes, plaintiff will have to pay the full filing fee for almost any future non-habeas civil action he might wish to file. *Id.* at 610.

Plaintiff has filed many lawsuits, most of which have been dismissed. *See Al-Haqq v. Akerman et al.,* Case No. 2:14-cv-3746-TMC-MGB; *Al-Haqq v. Stirling et al.*, Case No. 2:14-cv-98-TMC-WWD (dismissing suit for failure to state a claim);  *Al-Haqq v. Pate, et al.,* Case No. 2:13-cv-2867-TMC-MGB, *affirmed,* (4th Cir. Feb. 3, 2017);  *Al-Haqq v. Brown et al*., Case No. 8:05-cv-3215-HMH-BHH, *appeal dism'd,* (4th Cir. Aug. 2, 2014);  *Al-Haqq v. Byars et al*., Case No. 2:13-cv-2043-JFA-BHH (denying preliminary injunction and dismissing case), *appeal dism'd* (4th Cir. Sept. 26, 2014); *McFadden (aka Al-Haqq) v. Harrison*, Case No. 8:01-849-HMH-BHH; *Al-Haqq v. Weldon,* Case No. 5:97-1797-MJP-ESS. Plaintiff is warned that if he continues to file pleadings that are frivolous, malicious, or fail to state a claim for which relief may be granted, he risks the accumulation of three strikes against him and the resulting denial of future requests for IFP status, absent exceptional circumstances.

## IV. Discussion

### A. Section 1983

In order to state a claim under 42 U.S.C. § 1983, a complaint must allege facts indicating: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). While a complaint does not need to expressly invoke § 1983 as the legal theory for a plaintiff's claim, the United States Supreme Court has instructed that a complaint "must plead facts sufficient to show that [a] claim has substantive plausibility." *Johnson v. City of Shelby*, 135 S.Ct. 346 (2015) (citing *Iqbal*, 556 U.S. at 662). Plaintiff's Amended Complaint fails to meet this minimal pleading standard.

#### 1. No Right to Particular Prison, Custody Level, or Bed Assignment

Although Plaintiff complains of his brief prison assignment at Turbeville C.I. and wants his former "bed" at Kirkland C.I. back, the United States Supreme Court has repeatedly held that prisoners have no constitutional right to be housed in a particular correctional institution, in a particular unit of an institution, or at a particular custody level. *Olim v. Wakinekona*, 461 U.S. 238, 245–248 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-28 (1976); *Montanye v. Haynes*, 427 U.S. 236, 242 (1974). Plaintiff has previously been informed of this several times. *See Al-Haqq v. Harrison, et al.*, Case No. 8:01-849-HMH-BHH (dismissing case where Plaintiff complained about transfer, his classification, and loss of prison job; Court observed that "prisoners do not have a constitutionally recognized liberty interest in a particular security classification" or to a particular prison job); *Al-Haqq v. Weldon*, Case No. 5:97-1797-MJP-ESS (dismissing case where Plaintiff complained that he wanted his prison job back, wanted a different custody classification, and complained about lock-downs and other conditions of confinement).

Although Plaintiff complains about his classification and indicates he prefers to be housed at Kirkland C.I., the Fourth Circuit Court of Appeals has explained that "prisoners have no right under the Constitution to be held in either protective or minimum custody." *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir. 1994), *cert. denied*, 514 U.S. 1022 (1995). "[A]dministrative segregation and reclassification ... are ... discretionary administrative acts in which an inmate obtains no liberty interest." *O'Bar v. Pinion*, 953 F.2d 74, 83 (4th Cir. 1991). Inmates have "no protected liberty interest … from being classified, or being placed in administrative segregation, in a particular prison, or in a particular section of a prison." *Jones v. SCDC*, Case No. 5:12–cv–3554–RBH–KDW, 2013 WL 3880175, *3 (D.S.C. July 26, 2013) (citing *Meachum*, 427 U.S. at 215); *and see Dukes v. Leak*, Case No. 0:14–cv–3340-DCN-PJG, 2014 WL 7338959, *3 (D.S.C. Dec. 23, 2014) (holding that an inmate "has no protected liberty interest in his custody or security classification").

The United States Supreme Court has emphasized that the "decision where to house inmates is at the core of prison administrators' expertise." *McKune v. Lile*, 536 U.S. 24, 26 (2002). Federal courts must give great consideration to a correctional system's need to maintain order, discipline, and control. *Wolff v. McDonnell*, 418 U.S. 539, 558–62 (1974). Although Plaintiff complains about a lock-down after a dorm riot at Turbeville C.I., "it is well settled that the placement of inmates into administrative segregation units or similar units is a valid means of minimizing a threat to security of the institution, threat to the safety of other residents or Jail staff." *Jones*, 2013 WL 3880175 at *3. Although Plaintiff complains about his brief time at Turbeville C.I., the record reflects that Plaintiff was moved to MacDougall C.I., and then to Trenton C.I., where he remains today. Although Plaintiff demands that he be returned to Kirkland C.I., he has no right to be housed at any particular prison. Therefore, his Amended Complaint fails to state a plausible claim for relief. Further amendment of the facts would not cure such legal deficiency.

Plaintiff has been committed to SCDC to serve his sentence, and SCDC officials have discretion where to place him in its institutions. "Transfers … are made for a variety of reasons and often involve no more than informed predictions as to what would best serve institutional security or the safety and welfare of the inmate." *Meachum*, 427 U.S. at 225. The Due Process clause is offended only when an inmate is subjected to atypical and significant hardships in relation to ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 481 (1995). "Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment prohibition against cruel and unusual punishment." *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997).

Although Plaintiff complains about his brief stay at Turbeville C.I., he acknowledges in his Amended Complaint that he was moved from there for "security reasons." Plaintiff admits that he did not get along well with other inmates there. [8] Although Plaintiff complains about safety in general at Turbeville C.I., he also complains that such prison was often placed on lockdown for the purpose of maintaining security. In any event, Plaintiff is no longer at Turbeville C.I. or in "danger" from any alleged conditions there. After a brief stay there, Plaintiff was transferred to MacDougall C.I. As Plaintiff is no longer subject to the conditions at Turbeville C.I., his demand for injunctive relief is moot.

Plaintiff's brief placement at Turbeville C.I., though unpleasant to him, did not violate his federal constitutional rights. The United States Supreme Court has observed that the Eighth Amendment does not require that prisoners "be housed in a manner most pleasing to them." *Atiyeh v. Capps*, 449 U.S. 1312, 1315–16 (1981). Plaintiff's transfer to a different part of the prison also

---

[8] State records reflect that Plaintiff has committed numerous violations in prison, including possession of contraband, possession of cell phone, threatening to inflict harm on employees, refusing to obey orders, and (multiple incidents of) use and/or possession of narcotics, marijuana, and unauthorized drug inhalants.

did not amount to any sort of constitutional violation. Plaintiff himself indicates that the window was broken in a dorm riot and that he was therefore moved to a different section.

The United States Supreme Court has repeatedly explained that "prison officials have the discretion to transfer prisoners for any number of reasons." *Meachum*, 427 U.S. at 228. Although Plaintiff complains that he does not like the "younger" inmates at Turbeville C.I., he has no right to demand the placement of himself or other prisoners to suit his own preferences. *See Montanye*, 427 U.S. at 236 (holding that "prisoner had no right to remain at any particular prison facility"); *and see, e.g., Mann v. Leeke*, 73 F.R.D. 264, 267 (D.S.C. Nov. 6, 1974) (observing that a prisoner "has his rights; but he does not have the right to run the prison, or harass the officials with frivolous suits"), *affirmed by,* 551 F.2d 307 (4th Cir. 1977). Plaintiff's Amended Complaint does not allege any ongoing "atypical and significant hardship." Although Plaintiff wants his former bed at Kirkland C.I. back, this does not amount to any sort of "atypical and significant hardship." The Supreme Court has made it clear that a plaintiff must do more than make conclusory statements to state a plausible claim for relief. *Iqbal*, 556 U.S. at 677–79; *Bell Atlantic Corp.*, 550 U.S. at 555.

### 2. No Right to a Prison Job

Plaintiff complains that he wants his former prison job back. A prisoner has no liberty or property interest in a prison job, and loss of a prison job does not constitute an atypical and significant hardship. *See, e.g., Gilbreath v. Clark*, 193 F. App'x 741, 743 (10th Cir. 2006); *Williams v. Straub*, 26 F. App'x 389, 390-91 (6th Cir. 2001); *King v. Dingle*, 702 F.Supp.2d 1049, 1077 (D.Minn. 2010). Plaintiff has previously been informed of this. *See Al-Haqq v. Harrison*, D.S.C Case No. 8:01-0849-HMH-BHH (dismissing case, observing that "plaintiff has no constitutional right to participate in prison programs, so his ineligibility for prison work programs … is not a deprivation of constitutional magnitude").

Prisoners do not have a right to any job in prison, much less a specific one. *Sansbury v. Southern Health Partners*, Case No. 5:14–cv–1115–RMG–KDW, 2015 WL 2449057 (D.S.C. April 30, 2015), *adopted by*, 2015 WL 2449159 (D.S.C. May 21, 2015). Prison work assignments are a matter within the discretion of prison officials, and the denial of a particular prison job does not abridge any constitutional right. *Altizer v. Paderick*, 569 F.2d 812 (4th Cir. 1978). Plaintiff has no property interest in any prison job. *Wolff*, 418 U.S. at 557 (holding that the opportunity to earn work credit is not a constitutionally established liberty interest); *Backus v. Ward*, 151 F.3d 1028 (4th Cir. 1998) (an inmate has no property interest in a prison job); *Cosco v. Uphoff*, 195 F.3d 1221, 1224 n. 3 (10th Cir. 1999) (same), *cert. denied*, 531 U.S. 1081 (2001); *James v. Jackson*, Case No. 08–144, 2009 WL 291162, * 8 (D.S.C. Feb.4, 2009) ("[I]nmates do not have a liberty interest derived from the due process clause, nor do they have a property interest, in a specific job or any job at all while incarcerated"); *Tyler v. Eagleton*, Case No. 9:13–3181–MGL, 2014 WL 4702576, *7 (D.S.C. Sept.19, 2014) (inmates have no constitutional right to a prison job).

It is well-settled that a prisoner does not have a liberty or property interest in a prison job under the Due Process Clause. *See Altizer*, 569 F.2d at 813 (holding that inmate "was not denied any constitutional right by the action of the prison administrators in removing him, without a hearing, from assignment to [a particular prison job]"); *Garza v. Miller*, 688 F.2d 480, 486 (7th Cir. 1982) ("Any expectation that [plaintiff] might have had of keeping his prison job does not amount to a property or liberty interest."). Given that Plaintiff has no right to any particular prison job, his Amended Complaint fails to state a plausible claim on such basis. Plaintiff has been given several opportunities to amend his pleadings, and in any event, further amendment of the facts would not cure this legal deficiency of the Amended Complaint. Summary dismissal is appropriate.

Moreover, the Court has repeatedly informed Plaintiff in previous § 1983 actions that he has no right to a particular prison job, and therefore, Plaintiff's persistent claim on this meritless ground may properly be deemed "frivolous." *Denton*, 504 U.S. at 31 (holding that a finding of frivolity can be made where the complaint lacks an arguable basis either in law or in fact); *and see Green v. Young*, 454 F.3d 405, 409-10 (4th Cir. 2006) (explaining that a prisoner's claim refiled on the same ground already dismissed would be an example of a "frivolous" claim). Failure to state a claim and frivolity are both enumerated grounds for purposes of the applicable three-strikes statute. See 28 U.S.C. §1915(e)(2)(B).

### 3. No Supervisory Liability

Plaintiff's Amended Complaint sues various supervisory state officials, including Joette Scarborough (described as Division Director Central Classification and Inmate Records); Associate Warden Lane, Kirkland C.I., SCDC Classification Personnel (described as being "over security"); and Capt. Coleman (Unit Manager). Plaintiff fails to indicate how these state officials personally violated Plaintiff's constitutional rights.[9] A state official can be held liable under § 1983 in his individual capacity only if his "own individual actions ... violated the Constitution." *Iqbal*, 556 U.S. at 667 ("each Government official … is only liable for his or her own misconduct"); *see also Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (a plaintiff must allege facts indicating that a defendant acted personally to deprive him of his constitutional rights). In other words, individual liability under § 1983 must be based on personal conduct. *See e.g., Faltas v. South Carolina*, Case No. 3:11–3077–TLW–SVH, 2012 WL 988105, *4 (D.S.C.), *adopted by* 2012 WL 988083 (D.S.C.), *aff'd by* 489 F.App'x 720 (4th Cir. 2012).

---

[9] Plaintiff attributes his prison assignment to all the Defendants. With respect to Capt. Coleman, Plaintiff merely alleges that he "made a false statement to Plaintiff" and gave "Plaintiff's bed away in the Selou Unit" when Plaintiff was transferred. (DE# 24 at 6-7).

When a complaint contains no personal allegations against a defendant, that defendant is properly dismissed. *See, e.g., Reaves v. Richardson*, Case No. 4:09–820–TLW–SVH, 2011 WL 2119318, *6 (D.S.C.) ("without such personal involvement, there can be no liability under section 1983"), *adopted by* 2011 WL 2112100 (D.S.C. May 27, 2011); *Fox v. Drew*, No. 8:12–cv–421-MGL, 2013 WL 4776706, *11 (D.S.C. Sept.4, 2013) (a defendant is liable in his individual capacity only for his personal wrongdoing), *affirmed by* 563 F.App'x 279 (4th Cir. 2014). For this additional reason, the Amended Complaint fails to state a claim for relief against these Defendants.

## B. Plaintiff's Claim for Injunctive Relief is Moot

Additionally, although Plaintiff contends that he was in danger at Turbeville C.I., he is no longer housed there. Thus, his demand for injunctive relief regarding conditions there is moot. "As a general rule, a prisoner's transfer or release from a particular prison moots his claim for injunctive and declaratory relief with respect to his incarceration there." *Rendelman*, 569 F.3d at 186; *see also, Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 248-49 (4th Cir. 2005) (same). The Fourth Circuit Court of Appeals has held that "the transfer of an inmate from a unit or location where he is subject to the challenged policy, practice, or condition, to a different unit or location where he is no longer subject to the challenged policy, practice, or condition moots his claims for injunctive and declaratory relief, even if a claim for money damages survives." *Incuma v. Ozmint*, 507 F.3d 281, 286-87 (4th Cir. 2007), *cert. denied*, 553 U.S. 1007 (2008).

The Fourth Circuit Court of Appeals has held that upon removal from the location where a prisoner was subjected to the challenged condition, the prisoner "no longer has a legally cognizable interest in a judicial decision on the merits of his claim." *Incuma,* 507 at 287; *and see Taylor v. Rogers*, 781 F.2d 1047, 1048 n. 1 (4th Cir. 1986) (same); *Harley v. S.C.D.C.*, Case No. 2:16-cv-

3925-RMG-MGB, 2017 WL 2841254 (D.S.C. June 5, 2017) *adopted*, 2017 WL 2839634 (D.S.C. June 30, 2017) (same).

The Fourth Circuit Court of Appeals has also explained that an inmate has no further need for any injunctive relief once he is free of a challenged condition. As Plaintiff is no longer housed at Turbeville C.I., his request for injunctive relief regarding any conditions at Turbeville C.I. is moot. *Rendleman*, 569 F.3d at 186-87 (finding that plaintiff's claim for injunctive relief was moot due to his transfer to another prison); *Williams v. Griffin*, 952 F.2d 820, 821, 823 (4th Cir. 1991) (same, observing that any claim for injunctive relief related to prison conditions was "rendered moot" by prisoner's transfer to a different prison).

### C. <u>Sovereign Immunity</u>

Although this case is entirely subject to dismissal for enumerated reasons (i.e. "failure to state a claim" and "frivolity") under 28 U.S.C. §1915(e)(2)(B), the record reflects an additional reason for dismissal. Plaintiff seeks monetary damages from the Defendants in their "official capacity," however the Defendant state officials are immune from such relief under the Eleventh Amendment. Sovereign immunity protects the State itself, as well as its agencies, divisions, departments, officials, and other "arms of the State." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989) (explaining that a suit against a state official in his official capacity is "no different from a suit against the State itself."); *see also Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996); *Jones v. SCDC*, Case No. 5:12–cv–03554–RBH–KDW, 2013 WL 3880175, *4 (D.S.C. July 26, 2013). Neither a state nor an employee of a state, in the employee's official capacity, are considered "persons" for purposes of §1983. *Will*, 491 U.S. at 71. Further amendment of the facts would not cure such legal deficiency of the Amended Complaint.

The Eleventh Amendment bars a suit in a federal court by private parties seeking to impose liability upon a State or its officials, payable from public funds in the state treasury. *Quern v. Jordan*, 440 U.S. 332, 337 (1979). Therefore, any claims for monetary damages against the Defendants in their official capacity are subject to summary dismissal. Plaintiff has repeatedly been informed of this in previous lawsuits. *See Al-Haqq v. Pate,* Case No. 2:13–2867–JFA–WWD, 2014 WL 4389781 (D.S.C. Sept. 3, 2014) (dismissing claims for monetary damages against defendants in their official capacities "because they are immune from such liability under the Eleventh Amendment"); *Al-Haqq v. Bryant*, Case No. 2:14-cv-08-MGB (DE# 36 at 6, indicating that based on the Eleventh Amendment, "Plaintiff may not maintain an action in federal court against the Defendants in their official capacities"). Plaintiff nonetheless persists in re-asserting "official capacity" claims that he knows are meritless.

## V. <u>Conclusion</u>

In sum, the Amended Complaint is subject to summary dismissal because: 1) a prisoner has no constitutional right to be housed in a particular institution, at a particular custody level, or in a particular part of a correctional institution; 2) a prisoner has no liberty or property interest in a particular prison job, and the loss of a prison job does not constitute an atypical and significant hardship; 3) vicarious liability is not applicable in § 1983 suits, i.e. the Amended Complaint fails to allege how various supervisory Defendants personally violated Plaintiff's constitutional rights; and 4) the Defendant state officials in their official capacity are protected by sovereign immunity.

Plaintiff has previously been informed in prior cases that he has no right to be housed in a particular prison or unit, that he has no right to be assigned a particular prison job, and that the Defendant state officials in their "official capacity" are protected by sovereign immunity under the

Eleventh Amendment. Plaintiff's repetitive assertion of such meritless claims may fairly be deemed to be "frivolous." Finally, Plaintiff's demand for injunctive relief is moot.

## VI. <u>Recommendation</u>

Accordingly, the Magistrate Judge recommends that the Amended Complaint (DE#24) be **<u>dismissed with prejudice</u>**; the Amended Complaint fails to state a plausible claim for relief and asserts legally frivolous claims; this case is entirely subject to dismissal for enumerated reasons under 28 U.S.C. §1915(e)(2)(B), and therefore, dismissal of this Amended Complaint should count as a "strike" for purposes of 28 U.S.C. § 1915(g).

**IT IS SO RECOMMENDED**.

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

November 16, 2017
Charleston, South Carolina

Petitioner's attention is directed to the ***important notice*** on the following page:

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).